IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

    v.

ROBERT GLENN DANNER, JR.,

    Defendant.

CRIMINAL ACTION FILE

NO. 4:15-CR-00017-HLM-WEJ

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on defendant Robert Glenn Danner, Jr.'s Motion to Suppress Evidence [15] and Motion to Suppress Statement [16]. On October 14, 2015, the Court conducted an evidentiary hearing [20] regarding these Motions, which has been transcribed [23] (hereafter "Tr."). The parties have also briefed the issues raised. (See Def.'s Br [24]; Gov't Resp. [26]; Def.'s Reply [27].) For the reasons explained below, the undersigned **RECOMMENDS** that both Motions be **DENIED**.

## I.   STATEMENT OF FACTS

### A.   Mr. Danner's Criminal History

Mr. Danner was sentenced to probation beginning in 2003 as a result of a forgery charge, and to intensive probation beginning in 2011 as a result of a

firearm charge.  (Tr. 6-7.)  Throughout this period, he was under supervision by the Bartow County Department of Community Supervision ("Probation Office"). (Id. at 5-7.)  Mr. Danner was also sentenced to probation for two later possession of methamphetamine convictions in Bartow County.  (Id. at 7-8, 10-11.)

Defendant's first conviction for possession of methamphetamine was on August 1, 2006, in the Superior Court of Bartow County,[1] following a jury trial where he was represented by counsel. (Gov't Ex. 1; Tr. 7-9.) This conviction resulted in a sentence of confinement for fifteen years, the final eleven of which could be served on probation.  (Gov't Ex. 1, at 1; Tr. 8.)  On August 16, 2006, Mr. Danner signed a form agreeing to General Conditions of Probation that would apply during the final eleven years of the sentence.  (Gov't Ex. 1, at 2; Tr. 9.) This form specified that defendant "freely and voluntarily accept[ed] the . . . rules and special conditions and agree[d] to abide by them as a condition of being allowed to serve [his] sentence on probation." (Gov't Ex. 1, at 2.) Specifically, Mr. Danner agreed to the following:

> Probationer shall submit to a search of his/her person, houses, papers and/or effects as those terms of the Fourth Amendment of the United

---

[1] Defendant's case was Criminal Action No. 06-CR-789.  (Gov't Ex. 1.)

2

States Constitution are defined by the court, any time of the day or night, with or without a search warrant whenever requested to do so by a probation supervisor or any law enforcement officer and specifically consents to the use of anything seized as evidence in a proceeding to revoke this order of probation, as well as, any court proceeding involving the prosecution of the underlying violation(s) as separate criminal charge(s).

(Id. at 2; Tr. 9-10.)  Defendant also agreed that he would not "receive, possess, or transport any firearm or any other offensive weapon."  (Gov't Ex. 1, at 2; Tr. 10.) As of March 25, 2015, defendant was still subject to the terms of his 2006 probation agreement.  (Tr. 9.)

Mr. Danner's second conviction for possession of methamphetamine was on December 10, 2013, in the Superior Court of Bartow County,[2] while he was still on probation for his first methamphetamine conviction. (Gov't Ex. 2; Tr. 10-12.)  Again, defendant was represented by counsel.  (Tr. 11-12.)  Mr. Danner pled guilty to possession of methamphetamine and received a total sentence of three years and was required to complete a Residential Substance Abuse Treatment program. (Id. at 11-12; Gov't Ex. 2.)  Again, Mr. Danner signed an agreement regarding the conditions of his probation. (Gov't Ex. 2; Tr. 12.)  Specifically, defendant agreed that he:

---

[2] Defendant's case was Criminal Action No. 13-2668. (Gov't Ex. 2.)

3

> shall submit to a search of person, residence, papers, vehicle, and/or effects at any time day or night without a search warrant, whenever requested to do so by a Probation Officer or other law enforcement officer upon reasonable cause to believe that the Defendant is in violation of probation or otherwise acting in violation of the law, and the Defendant shall specifically consent to the use of anything seized as evidence in any judicial proceedings or trial.

(Gov't Ex. 2 at 4; Tr. 12.)  As of March 25, 2015, Mr. Danner was still subject to the terms of his 2013 probation agreement.  (Tr. 12.)

### B.    Informant Contacts the Probation Office

In February and March of 2015, the Probation Office received two phone calls from a "trusted source."  (Tr. 14-15.)  The caller "express[ed] concerns" about Mr. Danner "because he was making money somehow but was not working."  (Id. at 14.)  Based on this information, the Probation Office suspected that defendant may have been involved with drugs.  (Id.)  One of defendant's supervising officers, Probation Officer Jill Fisher, knew Mr. Danner had been employed at one point, and additionally that he had been doing some carpentry work and other odd jobs.  (Id. at 14, 21-22.)  She was also aware that defendant had medical problems that might have "slowed some of the steady employment" before February 2015, and was not "100 percent" sure whether he was steadily employed at the time of the phone calls and search.  (Id.)

4

Based on the suspicion that Mr. Danner was selling drugs, Probation Officer Fisher contacted Bartow County Sergeant Brian Bunce. (Tr. 29.)[3]   The officers decided to search defendant's residence,[4] and Probation Officer Fisher, three other officers from the Probation Office, and six officers from the Bartow Cartersville Drug Task Force, including Sergeant Bunce, did so on March 25, 2015.  (Id. at 15-16, 29, 40.)

### C.   Officers Search Defendant's Residence

Upon arriving at Mr. Danner's residence, the probation officers knocked on his door, and defendant answered.  (Tr. 16, 40-41.)  The officers spoke with Mr. Danner on his front porch.  (Id. at 16, 23-25, 29.)  Probation Officer Fisher asked defendant if he understood the conditions of his probation, and Mr. Danner responded that he did.  (Id.)  Probation Officer Fisher further asked defendant if he understood that "he was subject to search," and Mr. Danner again responded that he did.  (Id.)  The officers explained to Mr. Danner that they were at his residence in order to conduct a search.  (Id. at 16, 24.)   Before entering

---

[3] Sergeant Bunce worked for the Bartow County Sheriff's Office and was assigned to the Bartow and Cartersville Drug Task Force as well as the FBI Safe Streets group for northwest Georgia.  (Tr. 28.)

[4] Mr. Danner's residence is located at 12 Dripping Rock Trail, Acworth, Georgia, 30101.  (Tr. 15.)

defendant's residence, Probation Officer Fisher asked Mr. Danner to sign a "Waiver of Fourth Amendment Right" form.  (Id. at 17-18, 25-26, 30; Gov't Ex. 3.)  Defendant signed the form, which waived his Fourth Amendment rights and gave consent to a search of his "person, residence, papers and/or effects." (Gov't Ex. 3; Tr. 17-18, 25-26, 30.)[5]  Mr. Danner was not handcuffed during this conversation with the officers or when he signed the Fourth Amendment waiver form.  (Tr. 16-17, 19, 29.)  No guns were drawn, and officers did not yell at or threaten him.  (Id.)

After Mr. Danner signed the consent form, the officers searched his residence.  (Tr. 19-20, 30-31, 43.)  The officers found a loaded Rossi revolver, ammunition, and drug-related objects, including scales, pipes and a cut straw that

_____

[5] This form read in full as follows:

Robert Danner, hereinafter called the offender, is on active probation supervision. The offender waives his/her rights under the Fourth Amendment of the United States Constitution as defined by the Courts. The Offender consents to a search of his/her person, residence, papers and/or effects on the undersigned date(s) with or without a search warrant by a Probation Supervisor or any law enforcement officer. Offender specifically consents to the use of anything seized as evidence in a judicial or disciplinary proceeding.

(Gov't Ex. 3.)

tested positive in the field for methamphetamine.  (Id. at 32.)  Officers later found methamphetamine, as well as a locking key for the Rossi revolver, in defendant's pocket during a search incident to his arrest.  (Id. at 31-32.)

### D.     Defendant is Questioned by Police

After his arrest, Probation Officer Fisher drove Mr. Danner to the Bartow County jail.  (Tr. 20, 32-33, 44.)  No one threatened, yelled at, or promised anything to defendant en route to the jail.  (Id. at 20.)  The officers questioned Mr. Danner in a room just off the booking area inside the jail.  (Id. at 33.)  While at the jail and during questioning, Mr. Danner had access to a restroom and water fountains, was not handcuffed or placed in leg shackles, and had the ability to stand up and stretch if he wished.  (Id. at 32, 34.)  Neither officer had a firearm during the interview.  (Id. at 34.)

Sergeant Bunce administered a Miranda warning to Mr. Danner before beginning the interview.  (Gov't Ex. 4; Tr. 35-37.)  Sergeant Bunce recorded this warning, which the Court heard during the October 14, 2015 hearing.  (Gov't Ex. 4, Tr. 34-35.)  Specifically, Sergeant Bunce told Mr. Danner:

> You have the right to remain silent.  Anything you say can and will be used against you in a court of law.  You have the right to talk to a lawyer and have him or her present with you while you are being questioned.  If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.  You

7

can decide at any time to exercise these rights and not answer any questions or make any statements.

(Gov't Ex. 4; Tr. 36.)

After receiving the warning, Mr. Danner waived his rights in writing. (Gov't Ex. 5; Tr. 36-37.) Sergeant Bunce and Agent Eddie Leon then questioned him for around fifteen minutes. (Tr. 32-33, 38.) The interview conversation was relatively calm in tone, with no raised voices. (Id. at 37.) During the interview, no one made any threats or promises to defendant. (Id. at 37, 44.) Additionally, neither officer used a weapon or exerted any force on Mr. Danner, and Mr. Danner did not express any feelings of duress. (Id. at 37.)

## II.   THE INDICTMENT

On June 2, 2015, a grand jury in the Northern District of Georgia returned a one-count Indictment [1] against defendant. Count One alleges that, on or about March 25, 2015, in the Northern District of Georgia, defendant Danner, having been convicted of at least one prior felony offense (i.e., violations of the Georgia Controlled Substances Act on August 1, 2006, and December 10, 2013, in case numbers 06-CR-789 and 13-2668 in the Superior Court of Bartow County, Georgia; and a violation of 18 U.S.C. § 922(g) on June 28, 2011, in case number 11-9-589-49 in the Superior Court of Cobb County, Georgia), which was a crime punishable by imprisonment for a term exceeding one year, did knowingly

8

possess in and affecting interstate and foreign commerce, at least one of the following:  a firearm, that is, a Rossi .38 special caliber revolver; five live hollow point .38 special rounds of ammunition; and twenty-one live hollow point .38 special rounds of ammunition) in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The Indictment also contains a forfeiture provision.

III.   **ANALYSIS**

     **A.   Defendant's Motion to Suppress Evidence**

          **1.   Reasonable Suspicion**

Defendant argues that the search of his residence was improper because the officers lacked a reasonable suspicion that he was engaging in illegal activity. (Def.'s Br. 3-7; Def.'s Reply 3-5.)  The government responds that there was a reasonable suspicion that defendant was engaging in illegal activity and, even if not, defendant validly waived his Fourth Amendment rights.  (Gov't Resp. 9-12.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV. A search conducted without a warrant issued upon probable cause, like the search at issue here, is "per se unreasonable [under the Fourth and Fourteenth Amendments]. . . subject only to a few specifically

established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) and Coolidge v. New Hampshire, 403 U.S. 443, 454-455 (1971)). However, while "[t]he Fourth Amendment's protection against unreasonable searches and seizures unquestionably applies to probationers," United States v. Wasser, 586 F. App'x 501, 504 (11th Cir. 2014) (per curiam) (citing Owens v. Kelly, 681 F.2d 1362, 1367 (11th Cir. 1982)), probationers have a diminished expectation of privacy. See Owens, 681 F. 2d 1367; see also United States v. Knights, 534 U.S. 112, 119 (2001). Thus, "[a] court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." Knights, 534 U.S. at 119. Given that lesser expectation of privacy, requiring that a probationer waive his Fourth Amendment rights is a reasonable condition of probation. Id. at 121.

Here, Mr. Danner signed conditions of probation applicable to both of his probation terms where he agreed to search and seizure provisions allowing the government to search his person, house, vehicle, papers and effects at any time without a search warrant. When determining the reasonableness of a particular search, courts must weigh "on the one hand, the degree to which it intrudes upon an individual's privacy, and, on the other, the degree to which it is needed for the

10

promotion of legitimate governmental interests." <u>Knights</u>, 534 U.S. at 119 (internal citation omitted).  As noted, probationers have a diminished expectation of privacy, and the government has a heightened concern because probationers may "be more likely to engage in criminal conduct than an ordinary member of the community." <u>Id.</u> at 121.  Thus, Mr. Danner's search and seizure probation conditions were reasonable given the diminished expectation of privacy probationers enjoy and the government's interest in supervising them.  Mr. Danner does not challenge that he agreed to these conditions or their validity. (<u>See</u> Def.'s Br. 8, n.2.)

Even where a probationer is subject to a Fourth Amendment waiver provision, a search of his person or residence may not be conducted without a warrant unless law enforcement has a reasonable suspicion the probationer is violating the terms of his probation or engaging in illegal activity. <u>Knights</u>, 534 U.S. at 121.  Reasonable suspicion consists of "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." <u>United States v. Yuknavich</u>, 419 F.3d 1302, 1311 (11th Cir. 2005) (quoting <u>Knights</u>, 534 U.S. at 121).  When determining the existence of reasonable suspicion, courts should consider the totality of the circumstances to see whether an officer had a particularized and objective basis for suspecting

11

legal wrongdoing.   See, e.g., United States v. Cortez, 449 U.S. 411, 417-18 (1981).    Reasonable suspicion deals not with "hard certainties, but with probabilities."   Id.   An "inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required."   Yuknavich, 419 F.3d at 1311 (internal citation omitted).   Officers may draw on their own experience and specialized training to make inferences from and deductions about the information available to them that "might well elude an untrained person."   Cortez, 449 U.S. 411 at 418.   Ultimately, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."   Illinois v. Wardlow, 528 U.S. 119, 125 (2000).

The parties agree that reasonable suspicion is the standard.   However, they disagree on whether the facts here support its existence.   Considering the undisputed evidence, the totality of the circumstances demonstrate that the officers had a reasonable suspicion that defendant was engaged in criminal conduct.

As described above, the probation officers involved in Mr. Danner's case received two phone calls from what they described as a reliable source that Mr. Danner was making money, but was not working.   This gave them the impression

that defendant might be involved in selling drugs, in particular methamphetamine. This was a reasonable impression, given that Mr. Danner was on probation for a possession of methamphetamine charge that occurred while he was on probation for his first possession of methamphetamine charge. See United States v. Carter, 566 F.3d 970, 975 (11th Cir. 2009) (finding reasonable suspicion when defendant "appeared to live well beyond his means").

Defendant asserts that because Probation Officer Fisher was unsure as to whether Mr. Danner was actually employed at the time of the search, the informant phone calls were insufficient to create a reasonable suspicion that he was engaged in illegal activity (i.e., selling methamphetamine). Probation Officer Fisher testified that while she was aware Mr. Danner had worked in the past, she also knew that he suffered from medical issues that were affecting his ability to work full-time. There is no reason to doubt the reliability of her testimony. The informant tip that Mr. Danner was not working but earning income was sufficient, combined with Probation Officer Fisher's prior knowledge that Mr. Danner was limited in his ability to work full-time, to create a reasonable suspicion that he was involved in illegal drug activity. Thus, Probation Officer Fisher's knowledge was sufficient to justify the officers' search. "A reasonable suspicion may arise from the officers' collective knowledge, it is of no matter that [the officers]

13

received the information second hand." United States v. Godsey, 224 F. App'x 896, 899 (11th Cir. 2007) (per curiam) (citing United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004)).

Here, Mr. Danner signed valid search and seizure provisions in his conditions of probation, and officers had reasonable suspicion sufficient to search his residence.   Accordingly, the search was lawful and there is no basis to suppress the evidence found during that search.

### 2.      Defendant's Consent to Search

The government argues that even if the searching officers did not have a reasonable suspicion of illegal activity, the search of Mr. Danner's residence was still valid because Mr. Danner consented to the search in the "Waiver of Fourth Amendment Right" form he signed.  (Gov't Resp. 6-9.)  Defendant argues that any consent he gave was invalid because it was not made freely or voluntarily. (Def.'s Br. 6-7; Def.'s Reply 1-3.)

One of the exceptions to the Fourth Amendment requirement of a warrant issued upon probable cause is a search conducted pursuant to voluntary consent. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989) (citing Schneckloth, 412 U.S. at 219, and Zap v. United States, 328 U.S. 624, 630 (1946)).  Thus, with voluntary consent, law enforcement may search a person's property even in the

14

absence of probable cause, a warrant, or reasonable suspicion.  See United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989) (citing United States v. Villaueva Pineda, No. 1:11-CR-00006-CAP-JFK, 2012 WL 2906758, at *128 (N.D. Ga. June 4, 2012)).  "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice."  Garcia, 890 F.2d at 360 (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961).  In determining whether consent was voluntary, courts must consider the totality of the circumstances.  United States v. Tovar-Rico, 61 F.3d 1529, 1535 (11th Cir. 1995) (citing Schneckloth, 412 U.S. at 227)).  Further, "[t]he government bears the burden of proving . . . that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily."  United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir. 1993); see also Florida v. Royer, 460 U.S. 491, 497 (1983) (noting that burden to show voluntariness cannot be satisfied by showing submission to a claim of lawful authority).

The Eleventh Circuit has identified a non-exhaustive list of factors to consider when assessing whether consent to search is voluntary.  These factors, none of which is dispositive, include the following:

> . . . voluntariness of the defendant's custodial status; the presence of coercive police procedures; the extent and level of the defendant's cooperation with police; the defendant's awareness of his right to

15

refuse to consent to the search; the defendant's education and intelligence; and, significantly, the defendant's belief that no incriminating evidence will be found.

Blake, 888 F.2d at 798-99 (citing United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984).

Mr. Danner does not dispute that he waived his Fourth Amendment rights and signed a consent to search form. Instead, he asserts that his consent was invalid because it was not given freely and voluntarily. Thus, the resolution of the parties' dispute turns on the voluntariness of Mr. Danner's consent to the search of his residence. Considering the totality of the circumstances, Mr. Danner's consent was free and voluntary. Officers reminded defendant upon their arrival that he was on probation, and that his probation conditions included the search and seizure provisions. Mr. Danner indicated that he understood this. After informing defendant that they wanted to search his residence at that time, the officers presented defendant with the Waiver of Fourth Amendment form, which defendant signed. Mr. Danner was not handcuffed when he was given the consent form, and officers did not draw their weapons, yell at, or threaten him. Overall, the evidence shows that the interaction between defendant and the searching officers was cooperative and calm.

Mr. Danner argues that his consent was "not the product of an essentially free and unconstrained choice," <u>United States v. Zapata</u>, 180 F.3d 1237, 1241 (11th Cir. 1999) (quoting <u>Garcia</u>, 890 F.2d at 360), because no reasonable person would believe, under the circumstances, that if he did not consent, no search would be conducted.  In support of this contention, defendant proffers <u>Bumper v. North Carolina</u>, 391 U.S. 543 (1968).  The facts of that case, however, where the defendant's consent was found to be involuntary, are different from the facts here.

In <u>Bumper</u>, officers falsely told the occupant of a house that they had a warrant to search the house when they arrived.  <u>Bumper</u>, 391 U.S. at 547.  The occupant told officers to "come on in" and "go ahead."  <u>Id</u>.  The Supreme Court held that this consent was not voluntary, as "[w]hen a law enforcement officer claims authority to search a home under a warrant he announces in effect that the occupant has no right to resist the search.  The situation is instinct with coercion—albeit colorably lawful coercion.  Where there is coercion there cannot be consent."  <u>Id.</u> at 550.  Here, officers did not claim to have a warrant.  Instead, they reminded Mr. Danner that he had signed conditions of probation waiving some of his rights under the Fourth Amendment, which he said he understood.  Instead of relying solely on those waivers, the officers then sought a further

17

waiver of defendant's rights just before the search, which defendant gave in writing.

Defendant contends that this consent was not voluntary because a reasonable person in his position would have believed that if he did not consent, a search would still have been conducted anyway. Specifically, Mr. Danner argues that as in <u>Bumper</u>, where officers rendered consent involuntary by first relying on the authority of a warrant, officers here rendered consent involuntary by first relying on the authority of Mr. Danner's search and seizure provisions. The two fact patterns are not analogous. Defendant's search and seizure provisions are certainly authority that the officers mentioned before seeking his consent. However, Mr. Danner is incorrect in asserting that the officers' reminder of these provisions here is just as coercive as the officers appearing with a nonexistent warrant in <u>Bumper</u>. Mr. Danner signed not just one, but two conditions of probation containing a search and seizure provision. Any reasonable person in Mr. Danner's position would have been well aware that he was subject to these provisions, even had officers not mentioned them. Thus, the officers' reminder about these provisions could not have the same coercive effect as appearing unannounced with a purportedly valid search warrant.

18

Moreover, the fact that the officers sought additional written consent from Mr. Danner on the day of the search instead of relying only on the conditions of probation further reduced any coercive effect mentioning those conditions would have had.  That the officers took the time to seek further consent in writing should have signaled to defendant that he had the power to refuse consent, and that the probation conditions alone did not provide a sufficient justification to search his residence.

As the government observes, the facts here are more aligned with those of many cases in the Eleventh Circuit where consent was held voluntary under more coercive circumstances.  See, e.g., Garcia, 890 F.2d at 360-362 (finding consent to search voluntary when given after defendant was arrested, handcuffed, and faced fourteen police officers at his home, and officers told him they would return with a warrant unless he granted consent to search the entire home); United States v. Villanueva-Fabela, 202 F. App'x 421, 427-28 (11th Cir. 2006) (per curiam) (comparing Garcia, where agents said they intended to obtain a search warrant, and consent was held voluntary, and Bumper, where police coerced consent by falsely representing they already had a warrant, and consent was held involuntary); Hidalgo, 7 F.3d at 1571 (concluding consent to search voluntary when given after defendant was "arrested by SWAT team members who broke

19

into his home in the early morning, woke him, and forced him to the ground at gunpoint"); United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989) (explaining that "[e]ven if the officers stated that they could come back and 'dig the place up,' such a statement does not amount to coercion"); and United States v. Espinosa-Orlando, 704 F.2d 507, 510 (11th Cir. 1983) (holding consent to search voluntary when given after four officers forced defendant out of his car and onto the ground at gunpoint.). While the officers here did not explain the reasonable suspicion requirement to Mr. Danner, nor tell him that he could refuse consent, these omissions are insufficient to make his consent involuntary. See United States v. Yeary, 740 F.3d 569, 572 (11th Cir. 2014) (noting that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.").

Thus, considering the totality of the circumstances, here, Mr. Danner's consent was given freely and voluntarily. Accordingly, the officers' search was valid, and evidence obtained as a result of that search should not be suppressed.

## B.   Defendant's Motion to Suppress Statements

Defendant's Motion to Suppress Statement argues that statements obtained from Mr. Danner during or after the search should be suppressed because those statements were not made knowingly and voluntarily. (See generally Mot.

20

Suppress Statement.)  Specifically, Mr. Danner argues that because the waiver of his right not to incriminate himself was the product of an unlawful search, it was invalid.  (See id.)  The government responds that there is no basis for the suppression of statements because the search was lawful and thus could not taint any statement acquired during or after the search.  (See generally Gov't Resp.)

Because the Court finds that the search of Mr. Danner's residence was valid, it could not have tainted any of defendant's statements.  Moreover, Mr. Danner was given a full Miranda warning, after which he waived his rights in writing.  He was not threatened or promised anything in return for doing so.  Thus, defendant's Miranda waiver was valid and his statements should not be suppressed.

## IV.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that defendant's Motion to Suppress Evidence [15] and his Motion to Suppress Statement [16] be **DENIED**.

**SO RECOMMENDED**, this 23rd day of February, 2016.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE